UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LEITSCHA PONCEDELEON,

                Petitioner,

    -vs-

UNITED STATES OF AMERICA,

                Respondent.

No. 6:18-cr-06094-FPG
No. 6:19-cv-06886-FPG

DECISION AND ORDER

---

## INTRODUCTION

*Pro se* Petitioner Leitscha Ponce De Leon ("Petitioner") filed a motion under 28 U.S.C. § 2255, challenging her conviction and sentence in this Court. ECF No. 276. For the reasons set forth below, the motion is DENIED.

## BACKGROUND

### I.      The Plea and Sentencing

On July 12, 2018, Petitioner and three co-defendants were charged in a multi-count Indictment (ECF No. 73) based on their involvement in a drug-trafficking conspiracy that lasted from 2015 to 2018. Petitioner was charged in Count 1 with conspiracy to possess with the intent to distribute 5 kilograms or more of a mixture and substance containing cocaine and 1 kilogram or more of a mixture and substance containing heroin, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(A), in violation of 21 U.S.C. § 846. She was charged in Count 2 with knowingly and unlawfully possessing firearms in furtherance of a drug-trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.

On July 30, 2018, Petitioner appeared before the Court with her attorney, Jason E. Abbott, Esq. ("Defense Counsel"), pursuant a written Plea Agreement and entered a guilty plea to Count 1 of the Indictment. *See* Plea Agreement, ECF. No. 360-1. The parties agreed in the Plea Agreement that United States Sentencing Guidelines ("Guidelines") §§ 2Dl.l(a)(5) and 2Dl.l(c)(3) applied to the offense of conviction and provided for a base offense level of 34. In addition, they agreed to the application of several specific offense characteristics—a two-level increase pursuant to Guidelines § 2D1.l(b)(l) for possession of a dangerous weapon, and a two-level increase pursuant to Guidelines § 2D1.l(b)(12) for maintaining a premises to manufacture and distribute a controlled substance—that yielded an adjusted offense level of 38. Plea Agreement ¶¶ 6-8. The parties further agreed that, at sentencing, Respondent would not oppose the application of the two-level downward adjustment of Guidelines §3El.l(a) for acceptance of responsibility, and would move the Court to apply the additional one-level downward adjustment of Guidelines § 3E 1.1(b), which would result in a total offense level of 35. *Id.* ¶ 9.  With Petitioner's criminal history category of I, and the total offense level of 35, the Plea Agreement contemplated that her sentencing range would be a term of imprisonment of 168 to 210 months, a fine of $40,000 to $10,000,000, and a period of supervised release of 5 years. *Id.* ¶¶ 10-11. The Plea Agreement also contained an express waiver of Petitioner's rights to appeal and collaterally attack the sentence if the Court imposed a sentence within the agreed-upon sentencing range.  *Id*. ¶¶ 18-19.

At the July 30, 2018 proceeding, the Court first confirmed that Petitioner was not taking any medications or experiencing any conditions that affected her mental state. The Court obtained Petitioner's assurance that she had not been threatened or coerced into pleading guilty, and that she was satisfied with Defense Counsel's representation. Transcript of July 30, 2018 Plea Proceeding ("Plea Tr."), ECF No. 360-1 at 5-6. The Court reviewed and confirmed that Petitioner

understood the trial rights she was giving up by pleading guilty and the substance of the charge to which she was pleading guilty, as well as that the charge carried a mandatory minimum of 10 years' imprisonment and a maximum life term. *Id.* at 6-10.

The Court then asked Petitioner to explain "in [her] own words" how the conspiracy worked. Plea Tr. at 10. Petitioner stated that "[her] role was to make shipments of cocaine from Rochester to Puerto Rico," that she arranged at least 25 such shipments, and that she did this by communicating with her co-conspirators and others in Puerto Rico, and by sending money via mail and wire transfer. *Id.* at 10-11. Petitioner then allocuted to the factual bases of Count 1. *Id.* at 11-15.

The Court next discussed and reviewed with Petitioner the Guidelines' effect on her potential sentence. Petitioner confirmed that she understood and agreed with each of the increases to her base offense level. Plea Tr. at 15-18.

The Court also confirmed Petitioner's understanding that if it imposed a sentence of 168 months' imprisonment in accordance with the Plea Agreement, she was "waiving or giving up [her] right to appeal that sentence." Plea Tr. at 18-19. When the Court asked her if there was anything about the Agreement she did not understand, Petitioner responded, "No, sir." *Id.* at 20. Petitioner then executed the Plea Agreement in open court. *Id.* The Court read the charge set forth in Count 1 of the Indictment and Petitioner entered her guilty plea to that charge. *Id.* at 20-21.

Finally, the Court summarized the plea proceeding, including Petitioner's representations to the Court about her understanding of the charge to which she was pleading guilty, the rights she was waiving, and her satisfaction with Defense Counsel's services. Plea Tr. at 21-27. The Court also recited the factual averments Petitioner had made in support of her guilty plea to Count 1. *Id.*

at 22-27. The Court concluded that, based on all of Petitioner's statements under oath, her plea was "in all respects knowing and voluntary," that she "did articulate a factual basis for the plea," and therefore the Court "accept[ed] the plea of guilty." *Id.* at 27.

On November 28, 2018, the Court sentenced Petitioner to 168 months' imprisonment, in accordance with the Plea Agreement. *See* Sentencing Transcript ("Sent. Tr.") at 10, ECF No. 360-1. Respondent moved to dismiss Count 2, and the Court dismissed that charge. *Id.* at 14. Judgment (ECF No. 124) was entered on November 30, 2018.

Petitioner did not pursue a direct appeal.

## II.    Motion to Vacate Pursuant to 28 U.S.C. § 2255

On November 29, 2019, Petitioner filed the instant *pro se* Motion to Vacate (ECF No. 276) asserting that her plea was involuntary (Ground One); she was denied the effective assistance of counsel (Ground Two); and that her conviction was obtained based on evidence seized in violation of the Fourth Amendment (Ground Three).

At the Government's request (ECF No. 285), the Court ordered Defense Counsel to file an affidavit responding to Petitioner's allegations (ECF No. 286). The Court specifically directed Defense Counsel to address (1) the content of his discussions with Petitioner regarding the plea, including what options she had and whether she understood the plea agreement and chose to plead guilty; (2) his observations of and discussions with Petitioner on the day of the plea hearing concerning her willingness, capacity, and ability to plead guilty; (3) his discussions with Petitioner concerning his ability to try the case and the possible sentence she faced if she went to trial; (4) his alleged coercion of Petitioner; (5) the nature and extent of his investigation into the identified suppression issue and Petitioner's mental capacity; (6) his discussions with Petitioner regarding

4

the withdrawal of the guilty plea; and (7) his discussions with Petitioner regarding the filing of a notice of appeal. ECF No. 286.

Defense Counsel responded on February 5, 2020. *See* Declaration of Jason E. Abbott, Esq. ("Abbott Decl."), ECF No. 322. Petitioner filed an Affidavit in response on February 27, 2020. *See* ECF No. 334.

## DISCUSSION

### I.     28 U.S.C. § 2255

Title 28 U.S.C., Section 2255 ("§ 2255") provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Accordingly, relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotations and citation omitted).

A defendant seeking to challenge a criminal conviction collaterally through a § 2255 motion "must overcome the threshold hurdle that the challenged judgment carries with it a presumption of regularity[,]" *Williams v. United States*, 481 F.2d 339, 346 (2d Cir. 1973) (citation omitted), and must bear the burden of proof that a constitutional violation occurred, *id.* (citation omitted). It is well settled that "the scope of review on a § 2255 motion should be 'narrowly limited' in order to preserve the finality of criminal sentences and to effect the efficient allocation

of judicial resources." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (quoting *Bokun*, 73 F.3d at 12).

Rule 4(b) of the Rules Governing § 2255 Proceedings further provides that '[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion.'" *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b)); *see also*, *e.g.*, *Chang v. United States*, 250 F.3d 79, 85-86 (2d Cir. 2001) (district court not required to hold hearing before deciding § 2255 motion based on ineffective assistance of counsel claim alleging that counsel prevented petitioner from testifying, where petitioner made only general allegations and record contained affidavit from counsel explaining why petitioner did not testify).

## II.    Ground One: Involuntariness of the Guilty Plea

Petitioner asserts that her guilty plea was not knowing, voluntary, and intelligent because (1) "several medications to manage her chronic medical conditions . . . caused her to experience side effects which included confusion, agitation, memory difficulty and problems with concentration," which she experienced at the plea hearing; and (2) Defense Counsel coerced her into pleading guilty by telling her that if she did not enter a plea, she would be "charged with additional crimes that would lead to a harsher sentence." *See* ECF No. 276, Attachment 1.

### A.    Legal Standard for Evaluating the Voluntariness of a Guilty Plea

The long-settled standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (collecting cases). As the Supreme

Court has explained, "[a] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady v. United States*, 397 U.S. 742, 755 (1970) (quotation and footnote omitted); *accord*, *e.g.*, *Bousley v. United States*, 523 U.S. 614, 619 (1998).

A reviewing court "must . . . take into account admissions made by the defendant at [her] plea hearing, for '[s]olemn declarations in open court carry a strong presumption of verity.'" *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). "[S]ubsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74; *accord Gonzalez*, 722 F.3d at 131.

## B.      Grounds for Finding Involuntariness

The Court first considers Petitioner's argument that her medications caused confusion and agitation and thus prevented her from making a knowing, voluntary, and intelligent decision to plead guilty. "Before accepting a guilty plea, 'the district judge [must] determine whether the defendant understands the nature of the charge against him and whether he is aware of the consequences of the plea.'" *United States v. Frayler*, 229 F.3d 1136, 2000 WL 1459722, at *3 (Table) (2d Cir. 2000) (unpublished op.) (quoting *United States v. Rossillo*, 853 F.2d 1062, 1064 (2d Cir. 1988)). "In particular, if the defendant indicates that [s]he is taking medication or has a condition that may require medication, the court should ensure that defendant retains the ability to understand the proceedings and enter a truly voluntary plea." *Id.*; *see Rossillo*, 853 F.2d at 1064-

7

66 (reversing conviction where, "[a]lthough the district court personally interrogated Rossillo, an on-the-record determination was not made concerning whether Rossillo was under the influence of any medication, drug or intoxicant[;]" "[i]Instead, when the district judge asked Rossillo for a response to its question, the court simply alluded to defendant's heart condition. Judge Bramwell never received a definitive 'yes' or 'no' answer from defendant")).

Here, the Court questioned Petitioner and made "an on-the-record determination," *Rossillo*, 853 F.3d at 1066, that Petitioner was not experiencing any side-effects from any of her medications, which she had last taken two days prior to the plea hearing:

> THE COURT:          Ok. Are you currently taking any medications or drugs?
> THE DEFENDANT: Not today, but yes. I didn't take none today.
> THE COURT:          Okay. How recently have you taken anything?
> THE DEFENDANT: The night before yesterday.
> THE COURT:          What was that?
> THE DEFENDANT: Vistaril; and last night I took my Paramax.
> THE COURT:          What's that for?
> THE DEFENDANT: For my seizures.
> THE COURT:          Okay. Are either one of those medications affecting your
> ability to understand these proceedings?
> THE DEFENDANT: No, sir.
> THE COURT:          Okay. Do you have any other health or medical condition
> affecting your ability to understand these proceedings?
> THE DEFENDANT: No, sir.

Plea Tr. at 5-6. As the foregoing excerpt makes clear, Petitioner, in her own words, declared under oath that the medications she was taking did not interfere with her ability to understand the proceeding.

Later, in summarizing what was said during the proceeding, the Court noted that Petitioner was "taking some medications," but had "not taken the medication at least within the last 24 hours;" that "both medications she takes she indicates do not affect her ability to understand these proceedings in any way;" and she had "no other health or medical condition affecting her ability

to understand these proceedings." Plea Tr. at 25. Petitioner never contested the accuracy of Court's statements about the lack of any impediment to her ability to fully comprehend, and participate in, the proceedings.

The Court turns next to Petitioner's argument that her plea was not knowing, voluntary, or intelligent because Defense Counsel coerced her into pleading guilty by informing her that if she did not do so, she would be charged with additional crimes that carried harsher penalties. Again, these belated assertions are controverted by the record of the plea proceeding. First, at the outset of the hearing, the Court confirmed that Petitioner was making the decision to plead guilty of her own free will:

> THE COURT:          Is anybody forcing you, coercing you or threatening you to enter a plea of guilty?
> THE DEFENDANT: No, sir.
> THE COURT:          Have you had a chance to review this agreement with your attorney?
> THE DEFENDANT: Yes, sir.
> THE COURT:          Are you satisfied with his representation?
> THE DEFENDANT: Yes, sir.

Plea Tr. at 6.

Later, the Court noted that "[n]obody's forcing her, coercing her or threatening her to enter a plea of guilty[,]" that she declared "she's had the opportunity to review this agreement with her attorney Mr. Abbott," and that she is "satisfied with his representation." *Id.* at 21. At no time during the proceeding did Petitioner dispute the Court's characterization of her statements. Her belated assertions in this motion are insufficient to overcome the presumption of truthfulness accorded to her previous statements under oath, in open court, that her plea was not the product of coercion or threats by anyone. "These in-court statements are afforded a 'strong presumption of verity,'" *Delutro v. United States*, No. 11-CV-2755 CBA, 2014 WL 4639198, at *8 (E.D.N.Y. Sept. 16,

9

2014) (quoting *Gonzalez*, 722 F.3d at 130–31), "and create a 'formidable barrier' to habeas relief," *id.* (quoting *Blackledge*, 431 U.S. at 74).

Petitioner's "claims of coercion fail because even if this Court accepted [her] allegations regarding [counsel]'s conduct as true, [her] in-court statements conclusively indicate that the alleged conduct did not result in a coerced plea." *Id.* (citing *United States v. Doe*, 537 F.3d 204, 213 (2d Cir. 2008) (holding that "the district court did not abuse its discretion in declining to hold an evidentiary hearing on the defendant's motion [to withdraw plea]" where "the defendant's unequivocal admissions under oath contradict his conclusory assertions of fearfulness"); *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution 'carry a strong presumption of verity,' and are generally treated as conclusive in the face of the defendant's later attempt to contradict them[.]'") (internal quotation and citation omitted). Moreover, the fact that Petitioner waited until the day before the statute of limitations expired before seeking to vacate her sentence "severely undercuts [her] argument that [s]he pleaded guilty involuntarily." *Doe*, 537 F.3d at 213 ("[T]he fact that the defendant waited five months to file his motion [to withdraw] strongly supports the district court's finding that his plea was entered voluntarily.").

## III.     Ground Two: Ineffective Assistance of Trial Counsel

Petitioner asserts a host of alleged errors by Defense Counsel—that he "failed to conduct a reasonable investigation by failing to request relevant FBI notes, DEA 6 reports, ATF reports and police reports which contained evidence of the illegal search and seizure of [Petitioner]'s home"; "failed to investigate [Petitioner]'s mental capacity to plead guilty despite [her] confusion, agitation, history of chronic medical problems and her history of prescribed medications with side effects"; "failed to seek a continuance at the July 30, 2018 plea hearing despite [Petitioner]'s

objections and her visible confusion and agitation in the court room"; failed to move to withdraw Petitioner's guilty plea despite her "multiple requests"; failed to file a notice of appeal despite her "repeated requests" and "despite the Court's order preserving [Petitioner]'s right to appeal"; and "coerced" her guilty plea "to conceal his unpreparedness for trial." ECF No. 276, Attachment 2. Defense Counsel has responded to Petitioner's vague and conclusory accusations of deficient representation in a detailed Declaration. ECF No. 232. As discussed further below, the Court concludes, based on the record before it, none of Petitioner's claims warrants relief under Section 2255.

### A.  Legal Standard for Evaluating Ineffectiveness Claims

To succeed on a claim of ineffective assistance of counsel, the petitioner must fulfill the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), by showing that "(1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Contino v. United States*, 535 F.3d 124, 128 (2d Cir. 2008). In the context of a conviction by guilty plea, the petitioner affirmatively must show that, but for counsel's deficient representation, she "would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### B.  Counsel's Alleged Errors

#### 1.  Failure to Investigate Fourth Amendment Issue Based on Search and Seizure

Respondent argues that Petitioner's ineffectiveness claim based on Defense Counsel's failure to conduct a reasonable investigation into the search and seizure of her home is barred from

habeas review under the doctrine of *Tollett v. Henderson*, 411 U.S. 258 (1973), because it concerns an alleged constitutional violation antecedent to the guilty plea. *See* ECF No. 360 at 18-19.

"A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea." *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996). Rather, the defendant "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutionally acceptable] standards." *Tollett*, 411 U.S. at 267. "In other words, it is immaterial whether the defendant's independent claims have merit; the court's sole concern is whether the guilty plea was 'made intelligently and voluntarily with the advice of competent counsel.'" *Le v. Bezio*, No. 1:11-CV-0647 MAT, 2014 WL 5819729, at *4 (W.D.N.Y. Nov. 10, 2014) (quoting *Tollett*, 411 U.S. at 265; citing *Coffin*, 76 F.3d at 497–98).

As this Court has already found, Petitioner intelligently and voluntarily elected to plead guilty. Petitioner's claim that Defense Counsel erred in failing to litigate a Fourth Amendment issue does not relate to his advice to her regarding the decision to plead guilty and therefore are barred under *Tollett*. *See United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997).

### 2.   Failure to Investigate Petitioner's Competency

Petitioner alleges that Defense Counsel was ineffective because, despite being aware of her "confusion," "agitation," and "chronic medical problems," he failed to investigate whether she had the mental capacity to plead guilty. Respondent counters that "absent any objective indication that [Petitioner] suffered from mental illness," Defense Counsel "cannot be deemed ineffective for failing to pursue an avenue that seemed unlikely." Resp. Mem. at 21 (citations omitted).

The Supreme Court explained in *Hill* that "where the alleged error of counsel is a failure to investigate . . . , the determination whether the error 'prejudiced' the defendant by causing [her] to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." 474 U.S. at 59–60; *see also*, *e.g.*, *Panuccio v. Kelly*, 927 F.2d 106, 109 (2d Cir. 1991) ("The likelihood that an affirmative defense will be successful at trial and an assessment of the probable increase or reduction in sentence relative to the plea if the defendant proceeds to trial are clearly relevant to the determination of whether an attorney acted competently in recommending a plea.").

Defense Counsel was "aware that the Petitioner suffers from several potentially debilitating health issues," and he "personally visited [her] . . . in jail numerous times (in lieu of a telephone conference or by letter) to discuss her case and plea agreement" in order "to ensure, at least in [his] mind, that she fully understood the nature of the proceedings and to ensure that [their] conversations regarding the same could unfold in real-time, with all her questions answered, to the best of [her] ability." Abbott Decl. ¶¶ 5, 8.  While Defense Counsel recalled "having to go over multiple aspects of her case over the course of several different jail visits because [she] did not remember earlier conversations[,]" by the time of the plea hearing, he "was satisfied, based on repetition, that the Petitioner understood and could recall all the critical aspects of her case and the terms of the plea agreement." *Id.*

The Court finds that Petitioner has failed to satisfy either the "prejudice" or "performance" prong of the *Strickland/Hill* inquiry. There is nothing in the record to establish that further investigation, such as having Petitioner undergo a psychiatric examination, would have led to the

discovery of any information that might have caused Defense Counsel to alter his recommendation that she plead guilty. As set forth in his Declaration, Defense Counsel recognized that Petitioner experienced difficulties with her memory, but he took appropriate steps to address those issues and to ensure he was fulfilling his professional obligations to Petitioner. This claim of ineffective assistance accordingly does not merit habeas relief.

### 3. Failure to Seek a Continuance

Petitioner faults Defense Counsel for failing to seek a continuance when she became confused and agitated at the plea hearing, allegedly due to her mental health issues and medications. This contention is refuted by Defense Counsel's Declaration, in which he stated as follows:

> [T]here was a point during the plea hearing where a break was taken due to the Petitioner's agitation. My recollection is that this agitation began during the factual portion of her plea colloquy, during which the Petitioner was reluctant to talk about her involvement in the subject drug conspiracy, as well as the actions of other coconspirators. During this break, the Petitioner was informed that, if she was unable to admit to the factual allegations contained in the plea agreement, then the Government would rescind the plea agreement and her case would proceed as indicted. On July 12 and July 28, [2018,] the Petitioner and I reviewed the "final" factual allegations that would have to be admitted to under the plea agreement. During these meetings, the Petitioner also indicated that she did not want to say the names of any alleged co-conspirators, to which I stated, as I also stated on the day of the plea hearing, that this was required under the terms of the plea agreement and that, if she was unable to admit to the factual allegations in the plea agreement, including discussing the actions of coconspirators, then the Government would rescind the plea offer and her case would proceed as indicted.

Abbott Decl. ¶ 5. Following the brief recess, the proceedings resumed, and Petitioner completed her plea allocution.

Petitioner has not established how the outcome of her criminal case would have been more favorable to her had Defense Counsel requested a continuance of the plea proceeding. Moreover,

Defense Counsel had no basis to request a continuance, given that Petitioner's plea colloquy continued without incident and, as the Court has already found, Petitioner was fully capable of understanding the proceeding and making a knowing, intelligent, and voluntary decision to plead guilty.

### 4.   Failure to Move to Withdraw the Plea

Petitioner claims that Defense Counsel was ineffective because he allegedly ignored her multiple requests to move to withdraw her guilty plea.  Defense Counsel avers, "I did not have any discussions with the Petitioner regarding the withdrawal of the guilty plea, and I have no recollection of the Petitioner ever contacting me regarding the same." Abbott Decl. ¶ 9.

"[A] district court may permit withdrawal of a guilty plea prior to sentencing 'upon a showing by the defendant of any fair and just reason.'" *United States v. Gonzalez*, 970 F.2d 1095, 1099-100 (2d Cir. 1992) (quoting Fed. R. Crim. P. 32(d)). "Although this standard implies that motions to withdraw prior to sentence should be liberally granted, *see United States v. Russell*, 686 F.2d 35, 38 (D.C. Cir. 1982), a defendant who seeks to withdraw [her] plea 'bears "the burden of satisfying the trial judge that there are valid grounds for withdrawal, taking into account any prejudice to the government."'" *Gonzalez*, 970 F.2d at 1099-100 (quoting *United States v. Quinones*, 906 F.2d 924, 928 (2d Cir. 1990) (quoting *United States v. Michaelson*, 552 F.2d 472, 475 (2d Cir.1977)), *cert. denied*, 498 U.S. 1069 (1991)). "The fact that a defendant has a change of heart prompted by [her] reevaluation of either the Government's case against [her] or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *Id.* (citing *United States v. Figueroa*, 757 F.2d 466, 475 (2d Cir. 1985) ("The reasons urged by Figueroa to support his withdrawal motion boil down to a change of heart prompted by a reevaluation of the government's case against him; but these do not constitute sufficient justification to overturn the

district court's broad discretion in this area."); *Michaelson*, 552 F.2d at 476 ("Michaelson's change of mind after the trial of his co-defendants had ended and after he had seen the Pre-Sentence Report is simply not sufficient reason to require the district judge to grant the motion."); footnote omitted)).

Petitioner entered her plea "voluntarily, fully knowing the possible consequences of such a plea; [s]he also admitted in open court that [s]he had been involved in the narcotics distribution operation." *Figueroa*, 757 F.2d at 475 (citation omitted). She does not now advance any reasons or facts suggesting that withdrawal of the plea would have been "fair or just" so as to warrant exercise of the Court's discretion under Fed. R. Crim. P. 32(d). Indeed, a review of the sentencing transcript yields no hint that Petitioner was having "buyer's remorse" about her decision to plead guilty. Even assuming for the sake of argument that Petitioner had asked Defense Counsel to file a motion to withdraw her guilty plea, she provided him no colorable grounds on which to do so. Defense Counsel did not act in a professionally unreasonable manner by declining to make a motion that had no likelihood of success, and Petitioner was not prejudiced by the failure to make such a motion.

### 5.  Failure to File a Notice of Appeal

Petitioner asserts that Defense Counsel failed to file a notice of appeal despite her request to do so. Defense Counsel disputes that Petitioner made such a request.

In *Campusano v. United States*, 442 F.3d 770 (2d Cir. 2006), the Second Circuit endorsed the "application of the [*Roe v.*]*Flores-Ortega*[, 528 U.S. 470, 483-84 (2000)] presumption [of prejudice] to post-waiver situations[,]" 442 F.3d at 775, that is, where the defendant has agreed to waive his appellate rights. Thus, "[w]hen a defendant claims that his attorney failed to file a

requested notice of appeal," the Second Circuit has dictated that "the following proceedings will ensue: (1) a hearing before the district court pursuant to § 2255 to determine whether the client requested the appeal; (2) an appeal from the district court's ruling, should either party seek one; and (3) a direct appeal if the defendant did in fact request that a notice of appeal be filed." *Campusano*, 442 F.3d at 776. Although the Second Circuit "require[s] the district court to hold a hearing without assessing the merits of the requested appeal[,]" *id.* at 776, it has clarified that "the district court has discretion to determine if a testimonial hearing will be conducted." *Id.* (citing *Chang*, 250 F.3d at 85 (noting that the Supreme Court has held that, "although a hearing may be warranted, that conclusion does not imply that a movant must always be allowed to appear in a district court for a full hearing"); other citation omitted). The source of the district court's discretion is Section 2255 itself, which permits the court substantial latitude in deciding whether "'allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner.'" *Chang*, 250 F.3d at 85 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)); citing *Machibroda*, 368 U.S. at 495 n.4 (relying on 28 U.S.C. § 2255, which expressly provides that the "court may entertain and determine such motion without requiring the production of the prisoner at the hearing") (quotation omitted).

"Thus, where, as here, a Section 2255 petitioner alleges ineffective assistance of counsel, but [her] factual assertions are contradicted by 'a detailed affidavit from trial counsel credibly describing the circumstances[,]' *Chang*, 250 F.3d at 85, relevant to the claim, there is no per se requirement that a full testimonial hearing be held." *Douchette v. United States*, No. 6:10-CR-06058-MAT, 2017 WL 2931385, at *5 (W.D.N.Y. July 10, 2017) (citing *Chang*, 250 F.3d at 85; *Nicholson v. United States*, 566 F. Supp.2d 300, 304-05 (S.D.N.Y. 2008) (detailed attorney affirmations contradicting § 2255 petitioner's claim that he asked his lawyers to file a notice of

appeal were sufficient to obviate the need for an evidentiary hearing, particularly since petitioner offered no reply to those affirmations); *Florez v. United States*, No. CV-00-5073(DGT), 2007 WL 162764, at \*4 (E.D.N.Y. Jan. 18, 2007) ("The determinative issue is whether or not [the § 2255 petitioner] directed [his lawyer] to file a notice of appeal. A review of the papers submitted by the parties, including a detailed affidavit from [the lawyer], are sufficient to decide this issue; a full testimonial hearing is unnecessary.")).

In his Declaration, Defense Counsel avers that Petitioner never asked him to file a notice of appeal:

> I did not have any discussions with Petitioner regarding the filing of a notice of appeal, and I have no recollection of the Petitioner ever contacting me regarding the same. During the pendency of the criminal case, the Petitioner and I had several conversations that, by entering into the plea agreement, she would be giving up her right to appeal. My recollection is also that during the plea hearing and the sentencing hearing the Petitioner was reminded of the same by the Court.

Abbott Decl. ¶ 10.  As Defense Counsel notes, Petitioner, as part of the Plea Agreement which she signed, expressly waived the right to appeal or collaterally attack the sentence. *See* Plea Agreement ¶¶ 18, 19. The Plea Agreement includes an attestation by Petitioner that she read and understood the Agreement's terms. And, at the plea hearing, Petitioner confirmed under oath that she understood that she was waiving her right to appeal or collaterally attack the sentence. Plea Tr. at 18-19.

Petitioner has offered nothing to rebut Defense Counsel's detailed Declaration or to undermine the validity of her explicit and knowing appellate rights waiver, made in writing and verbally under oath. For instance, Petitioner has failed to provide any specific details about the alleged conversation with Defense Counsel, such as the date on which it took place and where it occurred, what Defense Counsel said in response to the alleged request, what issues Petitioner

wanted Defense Counsel to have raised on direct appeal, "an explanation as to why these issues were meritorious or at least colarable, or suggestions as to how to overcome the preclusive effect of the appellate rights waiver in [her] knowing, intelligent and voluntary plea agreement." *Douchette*, 2017 WL 2931385, at *5. "Having reviewed the pleadings, submissions, and related documents of record, the Court concludes that any further evidentiary hearing in this action would 'add little or nothing to the written submissions.'" *Id.* (quoting *Chang*, 250 F.3d at 86).

### 6. Coercion

Petitioner contends that Defense Counsel ignored her communications to him, both prior to and at the plea proceeding, that she did not want to accept a plea deal and that she wanted to proceed to trial. She claims Defense Counsel coerced her into accepting the plea by telling her that if she did not plead guilty, the Government would levy additional criminal charges against her that would result in a harsher sentence.

As discussed above, Petitioner's allegations of coercion are belied by her sworn statements at the plea proceeding and are not entitled to any credence. In contrast to her belated and vague assertions, Defense Counsel's Declaration contains specific details about his advice to Petitioner regarding the consequences of turning down the plea offer:

> I did not "insist" that the Petitioner plea to anything. What I cautioned the Petitioner . . . is that, if she did not accept the plea agreement, then it would be withdrawn. I also told the Petitioner that, should the offer be withdrawn, she would also be facing a weapons charge that could result in a harsher sentence, should she be convicted at trial. Notably, the Indictment did charge the Petitioner with a firearms charge under 18 U.S.C. § 924(c)(1)(A). A weapons charge was not included as part of the negotiated plea agreement.

Abbott Decl. ¶ 7.

In fact, as Defense Counsel noted, the Indictment did charge Petitioner, in Count 2, with a violation of 18 U.S.C. § 924(c)(1)(A)(i). That statutory section provides as follows:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> (i) be sentenced to a term of imprisonment of not less than 5 years. . . .

18 U.S.C. § 924(c)(1)(A)(i). Where applicable, the prescribed five-year minimum sentence for possession set forth in 18 U.S.C. § 924(c)(1)(A)(i) "must run consecutively to any other term of imprisonment, including the term imposed for the predicate crime of violence or drug trafficking." *United States v. Tejada*, 631 F.3d 614, 617 (2d Cir. 2011) (citing 18 U.S.C. § 924(c)(1)(D)(ii)).

Thus, had Petitioner proceeded to trial on the full Indictment, and had she been convicted of Count 2 as well as Count 1, the Court would have been *required* to impose a sentence of 5 years' imprisonment for the Count 2 conviction. *See id.* Moreover, this sentence would be *required* to be served consecutively to, not concurrently with, whatever term of imprisonment was imposed for the Count 1 conviction. *See id.* However, as part of the Plea Agreement, the Government moved to dismiss, and the Court dismissed, Count 2. This was a significant benefit conferred by the Plea Agreement. In sum, there was nothing inaccurate or misleading about Defense Counsel's statements to Petitioner regarding the criminal charges and sentencing exposure she would face if she did not accept the guilty plea. The Court finds that Petitioner's claim of being threatened and coerced lacks a colorable factual basis.

## IV.      Ground Three: Fourth Amendment Violation

Petitioner contends that the search and seizure of her apartment in January 2018 was unreasonable under the Fourth Amendment because several of the same police officers who responded to the break-in at her residence in December 2017 were also involved in the search and seizure, and that these officers have been found to have engaged in misconduct and evidence tampering. This claim fails for several reasons.

First, this Fourth Amendment claim—which does not relate to the voluntariness of Petitioner's guilty plea—cannot provide a basis for habeas relief. *See*, *e.g.*, *LaMarco v. United States*, 336 F. Supp.3d 152, 166 (E.D.N.Y. 2018) ("The Petitioner entered a guilty plea in this matter and to the extent that the Petitioner's grounds for relief do not relate to the validity of the plea itself, but are veiled attacks on antecedent constitutional violations, relief under Section 2255 is precluded."). Generally, a guilty plea "conclusively resolves the question of factual guilt support the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue." *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006). If the defendant's admission of guilt is valid, she "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267. In light of the Court's finding that Petitioner's guilty plea was knowing, voluntary, and intelligent, her Fourth Amendment claim cannot form the basis for relief under § 2255. *See* C*zernicki v. United States*, 270 F. Supp. 2d 391, 393 (S.D.N.Y. 2003) ("[B]ecause the petitioner knowingly, voluntarily, and intentionally pleaded guilty . . . , the petitioner's claims relating to the alleged unconstitutionality of the prior search and seizure are not a basis to vacate or modify his sentence.") (citation omitted).

Second, the Fourth Amendment claim is barred by the valid collateral attack waiver in the Plea Agreement. *See* Plea Agreement ¶¶ 18-19. The waiver foreclosed Petitioner her from collaterally challenging her sentence if it fell within the stipulated range. *See id.* The Second Circuit has held such waivers enforceable. *See United States v. Salcido–Contreras*, 990 F.2d 51, 53 (2d Cir.1993) (*per curiam*) ("In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless."). Here, Petitioner was sentenced to 168 months' imprisonment, at the bottom end of the range contemplated by the parties. Therefore, the collateral attack waiver operates to bar her Fourth Amendment claim. *See Czernicki*, 270 F. Supp.2d at 393.

Third, the Fourth Amendment claim is procedurally defaulted because Petitioner did not raise it on direct appeal, and she has not shown cause for the default and prejudice attributable thereto. *See Campino v. United States*, 968 F.2d 187, 191 (2d Cir. 1992) (defendant did not show cause for, or prejudice from, failure to raise claim of illegal seizure of evidence on direct appeal where defendant knew of claim at time of appeal). In particular, she cannot rely on her claim of ineffective assistance of Defense Counsel as "cause," because, as discussed above, the Court has found that it lacks merit. *See Kalani v. United States*, No. 02 CIV. 8663 (SAS), 2002 WL 31453094, at *4 (S.D.N.Y. Oct. 31, 2002) ("Because Kalani's ineffective assistance of trial counsel claims are meritless, . . . Kalani's appellate counsel was not ineffective for failing to raise such claims on appeal. Accordingly, appellate counsel's conduct cannot serve as cause for Kalani's procedural default [of Section 2255 claim].") (citing *Edwards v. Carpenter*, 529 U.S. 446, 451

(2000) (holding that ineffective assistance can establish cause for a procedural default only if it is itself an independent constitutional claim)).

A petitioner unable to meet both the cause and prejudice prongs may collaterally attack a conviction only if she can establish that a serious constitutional error "has probably resulted in the conviction of one who is actually innocent." *Bousley*, 523 U.S. at 623 (quotation omitted). Petitioner has not come forward with any evidence that she is actually innocent of the drug-trafficking charge to which she pleaded guilty. Because the Court has concluded that Petitioner's guilty plea is valid, and because the Court has not been presented with evidence suggesting that Petitioner is not in fact guilty, she cannot overcome the procedural default based on a claim of actual innocence. *E.g.*, *Ferrer v. Superintendent*, 628 F. Supp.2d 294, 310 (N.D.N.Y. 2008).

## CONCLUSION

For the foregoing reasons, the Motion to Vacate (ECF No. 276) is DENIED. Because Petitioner has not made "a substantial showing of the denial of a constitutional right[,]" 28 U.S.C. § 2253(c)(2), the Court DENIES a certificate of appealability. The Clerk of Court is directed to close the civil case associated with Petitioner's motion (6:19-cv-06886).

IT IS SO ORDERED.

Dated: June 17, 2020
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court